TED N. STEFFEN AND PAMELA B. STEFFEN, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DRS. JONES, RICHMOND, PEISEL, P.S.C., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8988–76, 9514–76.     Filed March 30, 1978.

*Ernest Woodward II,* for the petitioners in docket No. 8988–76.

*Frank W. Burke,* for the petitioner in docket No. 9514–76.

*Wayne M. Bach,* for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in the Federal income taxes of petitioners as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 8988–76 | 1973 | $20,329.13 |
| 9514–76 | 1974 | 18,356.02 |

Due to concessions, the only issue remaining for decision in these consolidated cases is whether an amount paid to Dr. Ted N. Steffen by Drs. Jones, Richmond, Peisel, P.S.C. (hereinafter Corporation) was entirely for the redemption of his stock in the Corporation or whether it constituted in part compensation for services rendered.

### FINDINGS OF FACT

Some of the facts have been stipulated and they are so found.

Petitioners Ted N. Steffen and Pamela B. Steffen resided in Louisville, Ky., both at the time they filed their joint 1973 Federal income tax return and at the time they filed their petition herein.

Petitioner Corporation was also located in Louisville, Ky., at

all pertinent times. It is a professional service corporation which was organized in June 1970 under the laws of the Commonwealth of Kentucky. The Corporation uses the cash basis method of accounting.

Drs. Ted N. Steffen, Raymond Jones, Roland Richmond, and Francis Peisel are all medical doctors who practice their profession in Louisville, Ky. For several years prior to 1970, the four doctors practiced medicine together in a partnership form of business. On June 1, 1970, the four doctors incorporated a professional service corporation under the laws of the Commonwealth of Kentucky. On or near the same date, and again on or near June 1, 1972, each doctor executed an employment agreement with the Corporation. On June 1, 1972, the four doctor-stockholders entered into a corporate redemption agreement with the Corporation. In general this agreement provided terms and conditions on which the Corporation was obligated to purchase and the stockholders to sell or offer to sell to the Corporation their stock in the Corporation.

It was determined in 1973 that Dr. Steffen would leave the employ of the Corporation, and he offered his stock to the Corporation at that time. Several months of negotiations ensued until, on July 25, 1973, Dr. Steffen, the Corporation, and Drs. Jones, Richmond, and Peisel reached an agreement as to the terms on which Dr. Steffen's employee and shareholder relationship with the Corporation would be terminated. The agreement provided in pertinent part as follows:

> Steffen is both a stockholder and an employee of Corporation. The terms of his employment are set forth in an Employment Agreement dated June 1, 1972, between Steffen and Corporation. The disposition of his stock is set forth in Corporate Redemption Agreement dated June 1, 1972, between Steffen, Corporation and Stockholders.
>
> All parties have agreed to the termination of Steffen's employment and the redemption of his stock by Corporation on the following terms and conditions:
>
> 1. Effective this date, the said Employment Agreement is terminated in its entirety.
>
> 2. Steffen herewith transfers to Corporation all of his stock in Corporation. The said Corporate Redemption Agreement is terminated in its entirety and the following shall be followed instead:
>
> (a) Corporation has paid simultaneously to Steffen the sum of Forty Thousand Dollars ($40,000), receipt of which is hereby acknowledged by Steffen.
>
> (b) Corporation acknowledges Steffen's ownership of the medical instruments shown on the list previously submitted to Corporation by Steffen and

agrees to transfer to Steffen the insurance on Steffen's life owned by Corporation. (A copy of this list is attached hereto and made a part hereof.)

It is stipulated that this agreement was fulfilled in that Dr. Steffen surrendered his stock to the Corporation and was paid $40,000 by the Corporation.

The major subject of the negotiations which were finalized by the July 25, 1973, agreement concerned the valuation of the Corporation's accounts receivable. The amount of the accounts receivable held by the Corporation on May 31, 1973, was approximately $200,000. A discounted value of the accounts receivable was considered in arriving at the amount of $40,000 to be paid Dr. Steffen.

The medical instruments which Dr. Steffen received upon his departure from the Corporation had a value of $3,200 and the cash value of the insurance policy on his life was $775. Dr. Steffen reported a long-term capital gain of $10,632 from the redemption of his Corporation stock, computed by deducting a cost basis of $33,343 from $43,975, the total value of money and other property he received under the aforementioned agreement. His correct cost basis in his Corporation stock was $10,030.24.

The Corporation treated $1,000 of the $40,000 cash payment as having been paid to Dr. Steffen in redemption of his stock and deducted $39,000 as salary expense.

In his notices of deficiencies to Dr. Steffen and the Corporation, respondent made inconsistent determinations. He determined that Dr. Steffen received $1,000 in redemption of his Corporation stock and $42,975 as compensation from the Corporation. He determined that the Corporation was not entitled to a deduction for $39,000 as salary expense because that amount constituted a portion of the total amount paid to Dr. Steffen for his stock. On brief respondent takes the position that the entire amount of money and other property paid to Dr. Steffen, a value of $43,975, was for the redemption of his Corporation stock, and that the Corporation is entitled to no deduction for any portion of that amount as salary expense.[1]

---

[1]The parties have stipulated that Dr. Steffen's correct cost basis in his Corporation stock was $10,030.24. Consequently, subject to our resolving this case in accordance with the position respondent has taken on brief, he now agrees with Dr. Steffen that to the extent the redemption proceeds exceed his cost basis, Dr. Steffen realized long-term capital gain.

OPINION

The controversy in these proceedings arises out of an agreement dated July 25, 1973, by which Dr. Steffen's employee and shareholder relationship with the Corporation was terminated. The two taxpayers reported the transaction in inconsistent manners on their respective Federal income tax returns. Dr. Steffen treated the entire value of the money and other property he received as proceeds from the redemption of his Corporation stock. The Corporation treated $1,000 of the $40,000 cash which it paid to Dr. Steffen as having been paid for his stock and claimed a deduction for the remaining $39,000 as salary expense. Inasmuch as Dr. Steffen and respondent have reached agreement pending only our ultimate resolution of this case, and because we conclude that their agreement reflects the proper resolution of the case, our discussion will focus entirely upon the argument advanced by the Corporation.

The basis on which the Corporation asserts that it is entitled to a salary expense deduction is that the $40,000 it agreed to pay Dr. Steffen was attributable in large part to the accounts receivable of the Corporation. It reasons, therefore, that what it actually paid Dr. Steffen was "his share of the fees which he and his associated surgeons had earned in the year ended May 31, 1973 but which had not yet been collected." The gap between the premise and the conclusion is, however, a wide one. The Corporation's rationale fails not only to distinguish between Dr. Steffen's dual role as an employee and as a stockholder, but also fails to give recognition to its own corporate existence.

Despite some statements in the Corporation's briefs which suggest that there is a question of fact in this case as to whether the entire amount paid to Dr. Steffen constituted redemption proceeds, i.e., whether the entire amount paid to Dr. Steffen was for the purchase of his stock, see *Erickson v. Commissioner*, 56 T.C. 1112 (1971),[2] we perceive its position to be that as a matter of law the amount paid to Dr. Steffen which was attributable to accounts receivable constitutes compensation to him for which the Corporation is entitled to a deduction. The Corporation does not argue that it paid Dr. Steffen $39,000 pursuant to his employment contract, but, simply that it considered the value of

---

[2] See also *Emmer v. Commissioner*, T.C. Memo. 1978–102.

its accounts receivable in arriving at the amount it paid him. Recognition of this fact disposes of any factual basis on which we could hold for the Corporation, because as an employee Dr. Steffen had no legal interest in the accounts receivable. The accounts receivable do not represent the services which the employees have rendered the Corporation, but, rather, the services that the Corporation, through its employees, has rendered to others. In other words, the accounts receivable are obligations owed to the Corporation, not obligations owed by the Corporation to its employees. This distinction may be blurred in a closely held professional service corporation because of the dual role of the employee-stockholders, but it must nevertheless be recognized.[3]

The accounts receivable were a corporate asset. Dr. Steffen's only interest in them was as a shareholder, and then only as that asset affected the value of his stock.[4] Lest there be any misunderstanding as to the factual basis on which we proceed, however, we find as a fact that the entire $40,000 was paid to Dr. Steffen in his capacity as a shareholder of the Corporation. The July 25, 1973, agreement appears conclusive on this point, but, in any event, the record is devoid of any evidence to support a factual conclusion that Dr. Steffen was paid $39,000 pursuant to or in lieu of any rights he had as an employee of the Corporation.

Considering the Corporation's argument as a legal, as opposed to factual, matter, there is very little we can say other than to express our disagreement with its conclusion. That the value of the Corporation's accounts receivable was taken into account in arriving at the amount to be paid Dr. Steffen does not convert any part of that amount into compensation as a matter of law. Cf. *Estate of Mathis v. Commissioner*, 47 T.C. 248 (1966) (that part of the redemption price of preferred stock determined by reference to accrued but undeclared and unpaid dividends was not to be treated as ordinary dividend income). The Corporation misstates the proposition that a corporate distribution in

---

[3]The tax treatment which the Corporation seeks is that accorded a partnership upon the liquidation of a partnership interest. See 2 W. McKee, Nelson & Whitmire, Federal Taxation of Partnerships and Partners, ch. 22 (1977). See also *Holman v. Commissioner*, 66 T.C. 809 (1976), affd. 564 F.2d 283 (9th Cir. 1977). However, it is a corporation and its stockholders must accept the tax disadvantages as well as the benefits of its separate existence. *Moline Properties, Inc. v. Commissioner*, 319 U.S. 436 (1943).

[4]See n. 6 *infra*.

exchange for its stock that is essentially equivalent to a dividend does not receive exchange treatment. Sec. 302(a) and (b)(1).[5] Such a transaction is still a redemption, which is defined in section 317(b) as a corporation's acquisition of its stock from a shareholder in exchange for property. Similarly, the transaction involved herein is nonetheless a redemption because the value of the underlying assets was considered in arriving at the amount to be paid Dr. Steffen. In fact, it is not only logical, but to be expected, that their value would be considered in arriving at the redemption price.

A redemption of stock in a sense represents a distribution to the redeeming shareholder of appreciation in the value of corporate assets, or, as in this case, income, not yet realized by the corporation for tax purposes. See *Anderson v. Commissioner*, 67 T.C. 522, 538–541 (1976), on appeal (7th Cir., Aug. 30, 1977); *Estate of Uris v. Commissioner*, 68 T.C. 448, 462–463 (1977). In the sense that this is true, however, it does not convert a sale of stock into a sale of the corporate assets.[6] Nor does it convert the value of the stock which is attributable to unrealized corporate income into compensation, though the services of the redeeming shareholder as a corporate employee produced the corporation's right to the income. Whether, in view of the closely held nature of the Corporation and the concomitant income tax consequences of the stock redemption, the $40,000 and other property distributed to Dr. Steffen was a fair price for his stock, we do not know. However, the record fails to reveal any basis on which

---

[5] All statutory references are to the Internal Revenue Code of 1954, as amended.

[6] The sense in which any common shareholder "owns" a portion of the assets of the corporation in which he holds stock, see *Commissioner v. Gordon*, 391 U.S. 83, 90 n.5, is not the legal sense, as the Court of Appeals for the Sixth Circuit pointed out so well in *Owens v. Commissioner*, 568 F.2d 1233, 1238–1239 (6th Cir. 1977, 41 AFTR 2d 78–419, 78–1 USTC par. 9144), as follows:

"Normally, stock in a corporation represents an ownership interest in a going business organization; the stockholders do not own the corporation's property. 'The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members.' *Klein v. Board of Tax Supervisors of Jefferson County, Ky.*, 282 U.S. 19, 24 (1930). When a stockholder sells his stock, he is selling his proprietary interest in a going concern and not an interest in the corporate assets."

the Corporation is entitled to a salary expense deduction in the circumstances.

*Decision will be entered under Rule 155 in docket No. 8988–76.*

*Decision will be entered for the respondent in docket No. 9514–76.*